IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| ANTHONY HARRIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CASE NO.  02-CO-0712-W |
| | ) | |
| DAVID ROWERY, THOMAS LEWIS and | ) | |
| ROBERT CORTELL, | ) | |
| | ) | |
| Defendants. | ) | |

## FINDINGS AND RECOMMENDATION

Anthony Harris, an inmate in the custody of the Department of Corrections of the State of Alabama, initiated this civil action with a complaint filed in the Southern District of Alabama alleging violations of rights and immunities secured by the Constitution of the United States.  After disposition of the claims arising in that district, the action was transferred to the Northern District of Alabama where summary judgment was granted with respect to all remaining claims but for Mr. Harris's excessive force claims against David Rowery, Thomas Lewis and Robert Cortell.  A hearing was held before the undersigned magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b) and LR 72.1(b)(3)(D).

## THE COMPLAINT

Mr. Harris proceeds pursuant to the provisions of 42 U.S.C. § 1983.  As § 1983 itself establishes no substantive rights the first line of inquiry in analyzing a § 1983 excessive force claim is to identify the specific constitutional right allegedly infringed by the challenged application of force. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).  The Fourth Amendment prohibition against unreasonable seizures of the person, the Fourteenth Amendment Due Process Clause and the Eighth Amendment ban on cruel and unusual punishment

all protect an individual's personal security.  A plaintiff's status as a person undergoing seizure, a

pretrial detainee, or a convicted person determines which constitutional protection is afforded.

It is well-settled that the Eighth Amendment Cruel and Unusual Punishment Clause "was

designed to protect those convicted of crimes," and consequently the clause applies "only after the

state has complied with the constitutional guarantees traditionally associated with criminal

prosecutions." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986).

(Quoting *Ingraham v. Wright*, 440 U.S. 651, 671, n.40, 97 S.Ct. 1401, 1412, n.40, 51 L.Ed.2d 711

(1977)).  In *Graham*, the Supreme Court clarified that all successive-force claims are not to be

governed by a single standard.  Rather, a court must apply the constitutional standard governing that

specific right alleged infringed.  The court noted that standards used to evaluate excessive-force

claims under the Fourth and Fourteenth Amendments differ, further specifying:

> *All* claims that law enforcement officers have used excessive force –
> deadly or not – in the course of an arrest, investigatory stop, or other
> 'seizure' of a free citizen should be analyzed under the Fourteenth
> Amendment and its 'reasonableness' standard rather than under a
> 'substantive due process' approach.

(Emphasis in original).

The court went on to state that the Fourteenth Amendment Due Process Clause protects pretrial

detainees from the excessive use of force that amounts to punishment.[1/]  In Mr. Harris's case, as more

fully set forth below, he had been in the custody of Sumpter County authorities as a pretrial detainee,

escaped, and was arrested following the escape.  The incident which gives rise to the averments of

the complaint arose during Mr. Harris's transportation from the point of arrest to the point of

_____

[1/]   In *Garrett v. Athens-Clarke County*, 378 F.3d 1274 (11th Cir. 2004) the court observed that "although the line
is not always clear as to when an arrest ends and pretrial detention begins, the facts here fall on the arrest end."
[citations omitted].  *Garrett*, 378 F.3d at 1279, n.11.  By implication the Eleventh Circuit suggests that the
Fourth Amendment is the appropriate framework for the analysis of post-arrest, pre-detention cases.

detention.  While not insignificant Mr. Harris's status as a seized person or pretrial detainee is not

ultimately critical to the analysis of his claim.  Whether Mr. Harris was protected by the Fourth

Amendment, as an arrestee, or the Fourteenth Amendment as a pre-trial detainee, does not alter the

analytical process in this case.  Both the Supreme Court and the Eleventh Circuit have repeatedly

held that if "officials maliciously and sadistically use force to cause harm, contemporary standards

of decency are always violated."  *Hudson v. McMillan*, 504 U.S. 1, 9, 112 S.Ct. 995, 1000, 117

L.Ed.2d 156 (1992) (discussing excessive force in the Eighth Amendment context); see also *Whitley*

*v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *Skritch v. Thornton*, 280 F.3d 1295

(11th Cir. 2002).  At the time of the incidents giving rise to Mr. Harris's complaint the Supreme

Court had specifically stated that "under the Due Process Clause, a detainee may not be punished

prior to adjudication of guilt in accordance with due process of law."  *Bell v. Wolfish*, 441 U.S. 520,

535-36, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979).  Thus, *Bell's* prohibition on any pretrial

punishment, "defined to include conditions imposed with an intent to punish," establishes the

analytical framework.  Mr. Harris's claim is substantially the same whether considered under the

Fourth Amendment or the Fourteenth Amendment.

EVIDENTIARY HEARING

The burden of proof in civil cases is the same regardless of whether the finder of fact is a

judge in a bench trial or a jury.  *Cabrera v. Jakabovitz*, 24 F.3d 372, 382 (2d Cir.), *cert. denied,* 513

U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994).  That is, Mr. Harris bears the burden of satisfying

the finder of fact that he has proven every element of his claim by a preponderance of the evidence.

A preponderance of the evidence means such evidence as, when considered with that opposed to it,

has more convincing force, and demonstrates that what is sought to be proved is "more likely true

than not true."  See *Pattern Jury Instructions* (Civil Cases) *of the District Judges' Association of the Eleventh Circuit, Basic Construction No. 6.1 (1990)*.  In bench trials, the judge serves as the sole fact-finder and thus assumes the role of a jury.  In this capacity, the judge's function includes weighing the evidence, evaluating the credibility of witnesses, and deciding questions of fact, as well as issues of law.  *Childrey v. Bennett*, 997 F.2d 830, 834 (11th Cir. 1993).  "When there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous."  *Anderson v. City of Bessemer, North Carolina,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).  Findings based on the credibility of witnesses demand "... even greater deference to the trial court's findings; or only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily of the listener's understanding of and belief in what is said."  *Id.*, 470 U.S. at 575, 105 S.Ct. 1512.

In *Raddatz v. United States,* 477 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d (1980) the Supreme Court interpreted the Federal Magistrate's Act in holding that a district judge need not re-hear the testimony on which the magistrate judge relied in accepting the magistrate judge's findings and recommendation.  Rather, the Court held, the statutory command to district judges to make "a de novo determination" of those portions of the magistrate judge's findings and recommendations to which the parties object is satisfied as long as the judge, rather than the magistrate exercises "ultimate adjudicatory power."  *Id*. at 674-76, 100 S.Ct. at 2411-12.  The court also held that this arrangement does not violate the Due Process Clause or Article III of the Constitution.  *Id*. at 677-84, 100 S.Ct. 2413-16.

SUMMARY OF WITNESS TESTIMONY

Anthony Harris

Anthony Harris testified that on December 2, 1999 he had assaulted a corrections officer in Sumpter County and escaped from custody. He said that he led police on a high speed chase across the state which culminated in a traffic accident and his arrest in Bessemer, Alabama. Mr. Harris was taken to the Bessemer jail where Sumpter County Sheriffs Deputies Cortell and Lewis, came to place him under arrest for escape. The plaintiff was taken back to the Sumpter County Jail where other inmates were questioned concerning who had assisted Harris in his escape. The officers told Harris that he would be taken to Linden, Alabama in Marengo County for detention.[2] Mr. Harris testified he fell asleep and awoke when the car stopped on a dark road. He stated that "I knew what was going to happen." Harris testified that he was pulled from the vehicle by Cortell and Lewis while handcuffed. He testified that defendant Rowery had followed in another car. He said that the officers removed their pistols, locked them in the trunk, and began to beat him. Mr. Harris stated that Cortell kicked him in the chest and that he was struck with a flashlight by Deputy Lewis and Deputy Rowery. Mr. Harris testified that he received a cut on his head during the beating.

Mr. Harris stated that he was taken to Marengo County where he was booked into the jail by Jailer Jesse Wright.[3] He said Deputy Lewis told the jailer to "put him somewhere until the swelling goes down." Mr. Harris testified that he was kept in a detoxification or isolation cell for eight days. He also acknowledged, however, that he had been classified as a "high escape risk." He was told that he could not be released into general population by "Mr. Wright," the jailer. When

---

[2]     Marengo County is located in the Southern District of Alabama.

[3]     Wright denies he was present when Mr. Harris was booked into the detention center.

he was released into population eight days later other inmates asked him what had happened.  He then called his family.  Mr. Harris stated that he had not considered filing a lawsuit until another inmate, Willie James, told that "[he] could get paid for it."  He maintained that his clothes had "a little blood on it" somewhere but that the clothes had "come up missing" two or three days later.  He also said that the loss of his Michael Jordan tennis shoes "motivated" him to file the lawsuit.  He acknowledged that the booking sheet indicated that he had no injuries.

Dewan Dixon

Dewan Dixon testified that he had been an inmate in the Marengo County Jail at the time Mr. Harris was released into general population.  He stated that he saw a bandage wrapped around Mr. Harris's head but that he did not actually see an injury.  He said he had seen scars on Mr. Harris's arms.  Mr. Dixon, who has been convicted of the felony offense of manslaughter, testified that he was transferred to Clark County the next day and that when he came back to Marengo County he did not see the scars.  He stated that Mr. Harris did not complain of headaches after he and Harris became roommates.

Althea Harris

Mr. Harris's mother, Althea Harris, testified that she saw him on "that Sunday" when she, her own mother and her two sons went to visit him in Marengo County.  She testified that Mr. Harris had not said how long he had been in the detoxification cell.  She did not recall seeing any injuries.  She denied writing a written statement which had previously been introduced in support of Mr. Harris's motion for summary judgment.  She stated that "that is not my statement.  It may have been written by my son."

Defendant David Rowery

        Defendant Rowery testified that he followed the car with Cortell and Lewis in which they were transporting Mr. Harris from Sumpter to Marengo County.  He stated that there were no stops made and Mr. Harris was booked into the jail without incident.  He stated that the Marengo County authorities did classify Mr. Harris as an extreme escape risk.  He testified that he was aware of a motor vehicle accident at the time of Mr. Harris's arrest following the high speed pursuit.  Rowery testified that during the period of time Mr. Harris was held in Marengo County, he and Cortell went to Marengo County on two or three occasions to transport Mr. Harris to various appointments because he was "our inmate."  They took Mr. Harris by a Tuscaloosa County daycare center in order to visit his daughter and girlfriend.  On cross examination he stated that it took approximately 30 to 35 minutes or more to go from the Sumpter County Jail to the Marengo County Detention Facility.  He denied that he was involved in an altercation with Mr. Harris.

Deputy Robert Cortell

        Deputy Cortell testified that he had known Harris because he had arrested him on a previous burglary case.  He denied there was any physical violence or altercation.  Cortell stated that when they arrived at the jail in Marengo County he knew the person who processed Mr. Harris in by sight but not by name.

Deputy Thomas Lewis

        Deputy Lewis stated that he knew that a Sumpter County employee named Cook had been assaulted by Harris during the escape although he denied any special relationship with Mr. Cook. He stated that after the escape at approximately 9:00 p.m. he traveled to Jefferson County, Alabama at approximately midnight to assist in the arrest of Harris.  Harris, according to Lewis, was

transported to the Sumpter County facility, then on to Marengo County. He denied that there was an attack of any kind.

Richard McKinney

        Richard McKinney is the current Administrator of the Marengo County Detention Center. He testified that Mr. Harris was at the facility for more than three years. He stated that it is a policy of the jail to refuse to book into the facility an injured person. He stated that the isolation cells in the facility are frequently used for high risk inmates. He also stated that it is generally the case that inmates do not go directly into population when booked into the facility principally for security reasons. He testified that it is not inconsistent that inmates would be held in an isolation cell for eight days before release into population particularly one considered to be an escape risk.

Linda Lawson

        Ms. Lawson is a detention center corrections officer. She testified that she saw Harris four days after he was admitted and that she saw no injuries of any kind. Ms. Lawson stated that Mr. Harris did not complain that he had been assaulted. He never asked to see a physician.

Carla Gaines

        Ms. Gaines is currently a probation officer in Marengo County and was a jailer at the time of Mr. Harris's arrest. She said that she saw Mr. Harris when she came on the day shift after Harris had been released into general population. She did not see any injuries.

Deposition of Jesse Wright admitted by stipulation

        At the time Mr. Harris was booked into the Marengo County Detention Center, Jesse Wright was a jailer at the facility. Mr. Wright stated that he did not book Mr. Harris into the facility but saw him in the morning after he arrived. Mr. Harris was held in cell 1095, at the holding end of the

facility.  He knew that Mr. Harris had been brought in as an extreme "escape risk."  He saw Mr.

Harris at approximately 4:30 or 4:40 in the morning after Mr. Harris arrived at the facility.  He

testified that at the time Mr. Harris had no injuries to his head.  Mr. Wright also stated that it was

the policy of the Marengo County Detention Center and the sheriff's department at the time of Mr.

Harris's incarceration that if an injured party were to arrive at the jail, the deputies would be

required to transport that person to the hospital and obtain a release form before the person would

become an inmate.  Mr. Wright acknowledged a number of other complaints that had been made by

Mr. Harris related to the jail and jail conditions

FINDINGS OF FACT AND CONCLUSIONS OF LAW

The evidence preponderates that

(1)   Anthony Harris may have been injured in a traffic accident following his escape from
      the Sumpter County Jail;

(2)   He was transported to the Sumpter County Jail and later to the Marengo County Jail
      without incident;

(3)   Mr. Harris had no serious or visible signs of injury at the time of his admission to the
      Marengo County Jail;

(4)   Mr. Harris was held in a holding cell as an extreme escape risk prior to his release
      into general population;

(5)   Mr. Harris's motivation for bringing the law suit was his desire to be "paid;"

(6)   Mr. Harris was also motivated to bring the law suit because of his anger at jail
      authorities for losing his tennis shoes;

9

(7)     Mr. Harris was not assaulted by Deputies Rowery, Cortell and Lewis.[4]

After consideration of the applicable law and the evidence adduced at the evidentiary hearing

it is RECOMMENDED that judgment enter for the defendants and that Mr. Harris take nothing.

The parties are DIRECTED to Rule 72(b), *Federal Rules of Civil Procedure*.

As to the foregoing it is SO ORDERED this the 26th day of July, 2005.

_____

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE

---

[4]     The court emphasizes that as the finder of fact the above-stated conclusions are the facts as they arise from the evidence.  That said, however, the finding is only what it purports to be – that is, Mr. Harris has failed to prove by a preponderance of the evidence that his version of the events is more likely true than not true.